IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DONALD RAY JOHNSON JR. | § | |
| v. | § | CIVIL ACTION NO. 6:22cv434 |
| JUAN GARCIA, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Donald Ray Johnson Jr., an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are Wardens Juan Garcia and John Delapp, Major Michael McNeil, Sgt. Brandon Brewer, and Officers Logan Elkins and Luis Medina, TDCJ officers at the Coffield Unit. Of these Defendants, Warden Garcia and Warden Delapp have previously been dismissed.

**I. Background**

Plaintiff contends that on June 16, 2022, Officers Elkins and Medina entered his cell while he slept and assaulted him by attempting to gouge out his eyes and collapse his trachea by pounding on it with closed fists. He says that Sgt. Brewer witnessed this misconduct and failed to correct it, but instead encouraged the continuation of misconduct before engaging in it himself by overextending Plaintiff's middle and ring fingers. Plaintiff also alleges that Major McNeil instructed the officers to carry out the use of force.

These Defendants have been ordered to answer the lawsuit and have filed a motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies. The Defendants state that Plaintiff filed a Step One grievance complaining about the incident on June 16, the day it occurred. TDCJ began an investigation and on August 2, 2022, Plaintiff was notified that an additional 40 days were needed for an appropriate response to his grievance. (Docket no. 30-2, p. 19).

On November 8, 2022, the Defendants state that Plaintiff filed his lawsuit, before the investigation was complete and without filing a Step Two grievance appeal. While Plaintiff attaches an unprocessed Step Two grievance to his complaint, the Defendants say that there was no evidence that this grievance was ever submitted to TDCJ. Plaintiff's Step One grievance was answered on January 23, 2023, well after the lawsuit was filed. The Defendants argue that Plaintiff initiated his lawsuit prior to completion of the grievance process and he therefore failed to exhaust administrative remedies.

In his response to the motion for summary judgment, Plaintiff acknowledges that he filed his Step One grievance on June 16, 2022, and that on August 2, 2022, a notice of extension was sent to him. However, he asserts that after this time period expired, nothing else was ever said to him about it. He states that he sent a number of inmate request forms and letters to various officials and made several attempts to contact the Offender Grievance Program with only one response, but this response "only came after Huntsville ombudsman officials had to get involved concerning several issues plaintiff was oppressed with including several grievances not being returned."

Plaintiff also says that the Step Two grievance he submitted to the Court was in fact submitted to TDCJ grievance officials and it was returned unprocessed and highlighted only. He says that he is aware of TDCJ rules and made every good faith effort to exhaust administrative remedies as required by prison rules; however, he claims that the prison officials failed to follow their own protocol and policy by ignoring his many complaints regarding this Step One grievance.

**II. The Exhaustion Time Line**

In his original complaint, Plaintiff states that he is submitting exhibits to show that he has done his part in trying to exhaust administrative remedies but he is not receiving any cooperation. He attaches a copy of a Step Two grievance dated September 26, 2022, in which he says that his Step One grievance was never returned to him. Plaintiff also has an "inmate request to official" form dated September 20, in which he says that unit officials have not followed up on a 40 day extension and he has not yet received his Step One grievance back. He says that if there is a response on record, he needs to purchase a copy. The response to this request, signed by the unit grievance investigator, says "copies of grievances must go through law library. Also, you must attach the <u>original</u> Step I to this Step II for processing."

The time line in the present case thus shows that Plaintiff submitted his Step One grievance on June 16, 2022, the day of the incident. On August 2, 2022, 47 days later, Plaintiff was notified that an extension of 40 days would be necessary. On September 20, 2022, 49 days after receiving notice of the extension, Plaintiff submitted a request and was told that he would have to go through the law library and that he had to attach the original Step One grievance to a Step Two appeal. Plaintiff's lawsuit is signed October 25, 2022, which is 84 days after receiving notice of the extension. The response to his Step One grievance was signed January 31, 2023, 182 days after notice of the extension.

**III. Discussion**

In <u>Cantwell v. Sterling</u>, 788 F.3d 507, 509 (5th Cir. 2015), the plaintiff Lee Cantwell, a TDCJ inmate, claimed that he filed a Step One grievance but never received a response, and so he did not proceed to Step Two. The Fifth Circuit explained that exhaustion is an affirmative defense and the defendants have the burden of proving failure to exhaust, noting that exhaustion is defined by the prison's grievance procedures. However, there was no evidence what the applicable grievance procedure was at the relevant time.

The Fifth Circuit observed that in Wilson v. Epps, 776 F.3d 296, 301 (5th Cir. 2015), the court had stated that under some circumstances, a prison's failure to respond to a prisoner's grievance could result in a prison's administrative remedies being exhausted. The Louisiana grievance procedure at issue in Wilson stated that if a prisoner does not receive a response to his grievance, the prisoner is "entitled to" - and therefore, to exhaust, must - move on to the next step in the process. By contrast, in Underwood v. Wilson, 151 F.3d 292 (5th Cir. 1998), *overruled on other grounds as explained in* Gonzalez v. Seal, 702 F.3d 785 (5th Cir. 2012), the court held that when a prison's grievance procedures prescribe deadlines by which the authorities must respond to grievances, and do not set out any additional steps that prisoners must take upon that time elapsing, then prisoners in such circumstances have exhausted the available procedures. The Fifth Circuit said that "whether this case is in line with Wilson on the one hand, Underwood on the other, or presents other circumstances yet, we cannot say without the applicable grievance procedures before us." Cantwell, 788 F.3d at 509 n. 2. Consequently, the Fifth Circuit remanded the case to the district court for further proceedings.

The current TDCJ website has a copy of the Offender Orientation Handbook dated February 2017, which presumably was the handbook in effect at the time of the incident in the present case. Section VIII of this handbook, starting on page 73, outlines the grievance procedure. Under this procedure, a prisoner has 15 days from the date of the incident to file a Step One grievance. The Step One grievance may take up to 40 days from the date the unit grievance office receives the form, or 45 days for medical grievances. Additional time may be required to conduct an investigation, and if so, the prisoner will be notified of the extension in writing.

Section VIII.B states that the prisoner has 15 days from the "date returned to offender" noted in the Office Use Only box on the front of the grievance form to submit a Step Two appeal to the grievance investigator on the unit. Section VIII.G.1 says that Step Two appeals shall be submitted within 15 days from the date of the signature on the Step One form. Section VIII.G.3 says that a grievance may be rejected if originals are not submitted, and the original answered Step One shall

be submitted with a Step Two appeal. The grievance procedures contain no guidance or instruction on what prisoners are supposed to do if their Step One grievance is never returned, or is not answered within the allotted time.

The Defendants rely on Wheater v. Shaw, 719 F.App'x 367, 2018 U.S. App. LEXIS 2934, 2018 WL 775287 (5th Cir., February 7, 2018), in which a Mississippi prisoner, Billy Wheater, brought suit complaining of failure to protect and failure to provide insulin. The district court determined that he had withdrawn his grievances and dismissed the lawsuit for failure to exhaust. Wheater acknowledged withdrawing his grievance about the insulin, but argued that he did not withdraw his grievances concerning failure to protect. After being transferred to another prison, he inquired about the failure to protect grievances but was told that there was no record and he should refile. When he did, the new grievance was rejected as untimely.

Wheater contended that the prison officials tried to hinder him from obtaining relief, but the defendants responded that even if his grievances had been mishandled, he should have proceeded to the second step when he did not receive a reply at the first step. The district court did not address these contentions, relying only on the belief that Wheater had withdrawn his failure to protect grievance; however, the Fifth Circuit determined that there was a genuine issue of material fact as to whether or not Wheater had withdrawn that grievance.

The Fifth Circuit cited Wilson in stating that while under some circumstances, the failure to respond to a grievance can result in administrative remedies being exhausted, "a delay in responding to a grievance does not permit a prisoner to run to court without finishing the administrative process." While the Defendants in the present case highlight this quote, they fail to note the attached footnote, which cites the Mississippi Department of Corrections Handbook as saying "[the exhaustion] requirement does not fall by the wayside in the event that the prison fails to respond to

the prisoner's grievance at some preliminary step in the grievance process. Instead, the prison's failure to respond simply entitles the prisoner to move on to the next step in the process."[1]

As noted above, the TDCJ grievance procedure does not provide that the failure to respond to a grievance permits the prisoner to move to the next step - on the contrary, it is entirely silent as what steps, if any, a prisoner can take when the prison officials do not answer his grievance or exceed the grievance procedure's time limits. In fact, the grievance procedure itself makes it impossible for an inmate to proceed to Step Two when he has not received a response, because he is required to attach the original Step One grievance to his Step Two appeal. Thus, Wilson and Wheater are inapplicable to the present case because the grievance procedures involved in those cases are markedly different from that in TDCJ.

In McKinney v. Painter, slip op. no. 19-50010, 2022 U.S. App. LEXIS 2742, 2022 WL 287558 (5th Cir., January 31, 2022), a case involving the grievance procedure at the Midland County Detention Center, the Fifth Circuit - citing Wilson and Taylor v. Burns, 371 F.App'x 479 (5th Cir. 2010), a Mississippi case - held that "a prison's failure to respond to a prisoner's grievance can establish the exhaustion of administrative remedies where the prisoner nonetheless proceeded through all steps of the grievance process." The grievance procedure in the detention center allowed inmates to file Step Two grievances using the same form as the first step, stating that he is not satisfied with the investigation and outcome of the original grievance.

Here, however, the TDCJ grievance procedures do not permit prisoners to file Step Two appeals where they do not have the original Step One grievances. Plaintiff Johnson was also specifically told by the unit grievance investigator that he had to attach the original Step One to his Step Two appeal. (Docket no. 1-5, p. 1).

---

[1] The handbook is quoting from Wilson, 776 F.3d at 301.

Nor do the TDCJ grievance procedures prescribe any remedy for inmates whose grievances are not answered timely. Plaintiff Johnson received notice of an extension a week after the time for responding to his grievance had expired, and then his Step One grievance did not receive an answer until some six months after an extension of only 40 days was authorized. Plaintiff contends that he wrote to the grievance office in Huntsville, to the Office of the Inspector General, and to State Counsel for Offenders in an effort to get a response to his grievance. He also attaches a copy of an inmate request form sent to grievance officials at the Michael Unit.

The situation here is akin to that in Underwood, where the Fifth Circuit explained that when a prison's grievance procedures prescribe deadlines by which the authorities must respond to grievances, and do not set out any additional steps that prisoners must take upon that time elapsing, then prisoners in such circumstances have exhausted the available procedures. The TDCJ grievance procedures do not allow prisoners to file a Step Two appeal without attaching the original Step One grievance, rendering it impossible for prisoners to proceed to the next step without their original grievance. This is in marked contrast to the Louisiana and Mississippi procedures at issue in Wilson and Wheater, which procedures specifically provide for inmates to proceed to the next step if their grievances are not answered.

The Defendants' motion for summary judgment argues that Plaintiff should simply have waited for a response and contends that TDCJ's delay does not excuse the failure to exhaust. The Defendants rely on Wheater but do not cite any TDCJ regulations equivalent to the Mississippi regulation in that case providing that inmates may proceed to the next step if they receive no answer to their initial grievance. The Defendants also do not cite or refer to Underwood's holding that where a deadline elapses and the regulations prescribe no additional steps, the grievance process may be considered exhausted.

The Fifth Circuit has held that exhaustion is defined by the prison's grievance procedures, and courts may neither add to or take away from these procedures. Cantwell, 788 F.3d at 509. In the absence of any evidence that TDCJ is not bound by its own deadlines, or any showing that the

grievance regulations set out procedures for inmates to follow when these deadlines are not met, the Defendants have not met their burden of showing that Plaintiff failed to exhaust his available administrative remedies. Id. As such, their motion for summary judgment should be denied. *See also* Morris v. Aliu, civil action no. 6:21cv440, 2023 U.S. Dist. LEXIS 34065, 2023 WL 2297464 (E.D.Tex., January 8, 2023), *Report adopted at* 2023 U.S. Dist. LEXIS 33589, 2023 WL 2266130 (E.D.Tex., February 28, 2023) (denying summary judgment based upon exhaustion where TDCJ prisoner waited a month after the deadline to respond to his Step One grievance had passed before filing suit, despite numerous inquiries by the prisoner as to his grievance).

### III. Conclusion

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party, to the extent that such evidence is not contradicted by the videotape in the record; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Fed. R. Civ. P. 56.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the defendant has shifted the burden to the plaintiff by properly supporting his motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

The court has no obligation to sift the record in search of evidence to support a party's opposition to summary judgment. Adams v. Traveler's Indemnity Co., 465 F.3d 156, 164 (5th Cir. 2008). Instead, a party opposing summary judgment must identify specific evidence in the record that supports the challenged claims and articulate the precise manner in which that evidence supports the challenged claim. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). A properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A review of the pleadings and summary judgment evidence in this case shows that disputed issues of material fact exist as to whether Plaintiff exhausted all available administrative remedies in light of TDCJ grievance procedures. As a result, the Defendants' motion for summary judgment on the issue of exhaustion should be denied.

## RECOMMENDATION

It is accordingly recommended that the Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies (docket no. 30) be denied.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file objections to the findings, conclusions, and recommendations contained in this Report within 14 days after service with a copy thereof shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from appellate review of the unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 6th day of October, 2023.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE